U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

FEB 2 8 2014

CLERK, U.S. DISTRICT COURT
By _____
    Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL DEAN, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-89-A |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISIONER OF SOCIAL | § | |
| SECURITY, | § | |
|     DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Michael Dean ("Dean") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). On December 28, 2010, Dean protectively applied for SSI, alleging that his disability began on December 28, 2010. (Tr. 20, 113-21.)

His applications were denied initially and on reconsideration, and Dean requested a hearing before an ALJ. (Tr. 20, 58-61, 66-71.) On April 18, 2012, the ALJ held a hearing, and, on May 24, 2012, the ALJ issued a decision that Dean was not disabled. (Tr. 17-54.) Dean filed a written request for review, and the Appeals Council denied his request for review on December

1

7, 2012, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 1–5.)

## II.   STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, and numerous regulatory provisions.  *See* 20 C.F.R. Pt. 416.  The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920 (2009).  First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).  At steps one through four, the burden of proof rests upon the

2

claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[1]

### III. ISSUES

In his brief, Dean presents the following issues to the Court:

A. Whether the ALJ erred in failing to find at Step Three that Dean was disabled under section 12.04 of the Listing;

B. Whether the ALJ followed the proper legal standard in evaluating the opinion of Dean's treating physician;

C. Whether the ALJ failed to properly evaluate Dean's credibility; and

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

D. Whether the ALJ erred in relying on the testimony of the vocational expert ("VE") at Step Four.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 9-22; *see* Plaintiff's Reply ("Pl.'s Reply") at 1-3.)

## IV.   ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in his May 24, 2012 decision, stated that Dean had not engaged in any substantial gainful activity since December 28, 2010, the date Dean applied for SSI.  (Tr. 22.) He further found that Dean had the following "severe" impairments: "affective mood disorder, bipolar disorder, depression, and polysubstance abuse in remission."  (Tr. 22.)  Next, the ALJ held that none of Dean's impairments or combination of impairments met or equaled the severity of any impairment in the Listing.  (Tr. 22-23.)  As to Dean's residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember, and carry out short, simple instructions, and he can make judgments on simple work-related decisions.  He can have only incidental contact with the public or coworkers, and he can only have occasional contact with supervisors.

(Tr. 23 (emphasis omitted).)  The ALJ opined, based on this RFC assessment, that Dean was able to perform his past relevant work as a janitor.  (Tr. 28.)  Thus, the ALJ concluded that Dean was not disabled.  (Tr. 28-29.)

## V.   DISCUSSION

### A. Section 12.04 of the Listing

In his brief, Dean argues that the ALJ erred in failing to find that he met section 12.04 of the Listing.  (Pl.'s Br. at 9-12.)  Dean claims that there is no dispute that he satisfied the "A" criteria of the section 12.04 of the Listing and that the ALJ erred in relying on the "findings from the non-examining State Agency psychologists" in concluding that the "B" criteria was not met

4

"without discussing the contradictory opinions from the treating board-certified psychiatrist, [Robert L. Mims, M.D. ("Dr. Mims")]." (Pl.'s Br. at 10.)

To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing. 20 C.F.R. § 416.920(d). As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled at Step Three. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); *see also* 20 C.F.R. § 416.926(c) (stating that opinions that medical or psychological consultants designated by the Commissioner offer on the issue of whether an impairment meets or equals the requirements for a listed impairment will be considered); 20 C.F.R. § 416.927(d). Medical equivalence must be based on medical findings that are supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926.

In this case, the ALJ found at Step Three that Dean's impairments did not meet or equal the required criteria for any of the impairments set forth in the Listing. (Tr. 22-23.) Specifically, the ALJ stated:

> In determining if the claimant's impairments, either singly or in combination, meet or equal the severity of any listed impairment at 20 CFR Part 404, Subpart P, Appendix (the *Listing of Impairments*), I must consider the opinions of the State agency medical consultants who have evaluated this issue at the initial and reconsideration levels of the administrative review process, pursuant to 20 CFR 416.927; and SSR 96-6p. After review of the credible evidence, I concurred with the prior determinations that the severity of the claimant's impairments does not meet or medically equal any listed impairment in Appendix 1. In this case, those opinions were well supported by, and consistent with, the remaining credible medical evidence, particularly the objective medical evidence. Therefore, in this case I gave those opinions significant weight. In reaching this finding, I considered 12.04 and 12.06 regarding the claimant's mental impairments. During this evaluation, I determined that the claimant does not have marked or extreme limitations on the part "B" criteria and he does not meet the part "C" criteria. Therefore, he does not meet or medically equal listing 12.04 or 12.06.

(Tr. 22-23.)

To meet the Listing under section 12.04, which deals with affective disorders, Dean must

show, as relevant here, that the requirements in both parts A and B, listed below, are satisfied:

> A. Medically documented persistence, either continuous or intermittent, of one
>    of the following:
>    1. Depressive syndrome characterized by at least four of the following:
>       a. Anhedonia or pervasive loss of interest in almost all activities;
>          or
>       b. Appetite disturbance with change in weight; or
>       c. Sleep disturbance; or
>       d. Psychomotor agitation or retardation; or
>       e. Decreased energy; or
>       f. Feelings of guilt or worthlessness; or
>       g. Difficulty concentrating or thinking; or
>       h. Thoughts of suicide; or
>       i. Hallucinations, delusions, or paranoid thinking . . . .
>    . . . .
>
>    3. Bipolar syndrome with a history of episodic periods manifested by the
>       full symptomatic picture of both manic and depressive syndromes (and
>       currently characterized by either or both syndromes);

> AND

> B. Resulting in at least two of the following:
>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Marked difficulties in maintaining concentration, persistence, or pace;
>       or
>    4. Repeated episodes of decompensation, each of extended duration . . . .

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04.

As to Dean's arguments, the ALJ clearly specified that he found that Dean did not meet

or equal section 12.04 of the Listing based on the findings of the State Agency Medical

Consultants.[2]  (Tr. 22-23; *see* Tr. 55-56, 240-57, 295-96.)  In a Psychiatric Review Technique

form dated May 4, 2011, State Agency Medical Consultant ("SAMC") Matthew Snapp, Ph.D.

---

[2] SAMCs are considered experts in the Social Security disability program and their opinions may be entitled to great weight if they are supported by the evidence. *See* 20 C.F.R. § 416.927(e); SSR 96-6p, 1996 WL 374180, at *3.

("SAMC Snapp") opined, *inter alia*, that Dean was mildly restricted in his activities of daily living; had moderate difficulties in maintaining social functioning and concentration, persistence, or pace; and had no episodes of decompensation. (Tr. 250.) Such evidence, as well as other evidence in the record, provides substantial evidence for the ALJ's Step Three determination.[3] While the ALJ did not discuss Dr. Mims contradictory opinion regarding the "B" criteria at Step Three, the ALJ did discuss such opinion and the reasons he was rejecting it later in his decision. (Tr. 25-28.)[4] An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted). Because the ALJ sufficiently identified the rationale underlying his findings at Step Three that Dean's impairments did not meet or equal section 12.04 of the Listing and such decision is supported by substantial evidence, the Court concludes that the ALJ did not err.

### B. Consideration of Treating Source

Dean also argues that the ALJ erred in rejecting the opinions of Dr. Mims, Dean's treating physician. (Pl.'s Br. at 12-17.) Specifically, Dean claims, citing to *Newton v. Apfel*, 209

---

[3] Such other evidence includes, *inter alia*, the following: (1) an April 5, 2011 consultative examination in which Scott Hilborn, Ph.D. ("Dr. Hilborn"), opined that Dean was (a) capable of managing all daily activities, (b) had "limited" social functioning at times, (c) was not able to complete tasks in a timely and efficient manner, and (d) was not impaired in his ability to comprehend and carry-out instructions (Tr. 24-25; *see* Tr. 235-38); (2) treatment notes from the attending staff at Mental Health Mental Retardation of Tarrant County ("MHMR") that "consistently noted the claimant answered questions that were asked of him, his attention and concentration were good, and his thought processes were organized and directed" (Tr. 26; *see, e.g.*, Tr. 59-61); and (3) evidence that Dean was not always compliant with taking his medication or ran out of his medication (Tr. 25-26; *see, e.g.*, Tr. 378, 381, 397).

[4] In addition, the Court notes that the ALJ, later in his decision, provided a discussion of the criteria for the applicable mental impairment evaluation pursuant to the special technique set forth in 20 C.F.R. § 416.920a. (*See* discussion in section V.D., *infra*.) This discussion mirrors the criteria found in Part B of section 12.04 of the Listing. Based on all the evidence in the record, the ALJ found in his evaluation of Dean's mental impairments that such impairments resulted in (1) moderate restrictions of activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate restrictions in ability to concentrate and maintain persistence or pace; and (4) no episodes of prolonged deterioration or decompensation. (Tr. 26.)

F.3d 448, 455 (5th Cir. 2000), that the ALJ can only reject the opinion of a treating physician for good cause, which applies only if the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. (Pl.'s Br. at 12.)  In addition, Dean argues that the ALJ cannot reject or give little weight to the opinion of a treating physician without first considering the factors set forth in 20 C.F.R. § 416.927(c). (Pl.'s Br. at 13, 17-18.)  Dean claims that the ALJ erred in substituting his own view for that of the treating physician and "inappropriately translated the raw medical data into particular mental limitations for Mr. Dean after rejecting all the relevant medical opinions." (Pl.'s Br. at 14.)  Dean argues that the ALJ failed to identify any other substantial evidence that contradicts Dr. Mims' opinions and misrepresents Dr. Mims' and other medical records in the record. (Pl.'s Br. at 14-16.)  Moreover, Dean asserts none "of the selected findings cited by the ALJ provide substantial evidence contradicting Dr. Mims' opinions on Mr. Dean's mental functioning in a work environment over a longitudinal period of time." (Pl.'s Br. at 17.)

In a "Psychiatric/Psychological Impairment Questionnaire" ("Questionnaire") dated January 10, 2012, Dr. Mims, *inter alia*, diagnosed Dean with bipolar I disorder and indicated that Dean's prognosis was "[g]uarded." (Tr. 313; *see* Tr. 313-320.)  Dr. Mims indicated that Dean suffered from the following primary symptoms: depressed mood, insomnia, anxiety, paranoid ideation, auditory and visual hallucinations, and flashbacks. (Tr. 315.)   Dr. Mims opined that Dean was markedly limited in the ability to: (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (4) sustain ordinary routine without supervision; (5) work in coordination with or proximity to

others without being distracted by them; (6) complete a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (7) interact appropriately with the general public; (8) accept instructions and respond appropriately to criticism from supervisors; and (9) get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 316-17.) In addition, Dr. Mims opined that Dean was moderately limited in the ability to: (1) remember locations and work-like procedures; (2) understand, remember, and carry out simple one or two-step instructions; (3) make simple work related decisions; (4) ask simple questions or request assistance; (5) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (6) respond appropriately to changes in the work setting; (7) be aware of normal hazards and take appropriate precautions; (8) travel to unfamiliar places or use public transportation; and (9) set realistic goals or make plans independently. (Tr. 316-18.) In addition, Dr. Mims stated that Dean had "rapid-cycling mood swings," was paranoid and apt to have negative reactions to peers, had frequent anxiety attacks, was incapable of tolerating even low stress, and would likely be absent from work as a result of his impairments more than three times a month. (Tr. 318-20.)

As to Dr. Mims' treatment of Dean, the ALJ stated:

In February 2011, the claimant visited Dr. Mims to establish treatment for his mental impairments. The claimant's mental status examination was unremarkable, with the exception of a depressed and anxious mood. Dr. Mims noted the claimant did not have any side effects and his overall functioning was 5 on a scale of 1 to 10.

In March 2011, the claimant visited Dr. Mims for another evaluation. The claimant complained of visual and auditory hallucinations, in addition to his depressive symptoms. The claimant's mental status examination was essentially unremarkable, with the exception of a depressed mood, slowed rate of speech, and decreased productivity. The claimant was diagnosed with major depressive disorder

and polysubstance abuse in remission. Additionally, the claimant was assigned a GAF score of 35, and the attending staff noted the claimant's highest GAF score in the prior 12 months was 40, despite the fact that the MHMR's own notes contradict that fact.

In April 2011, the claimant returned to Dr. Mims for another evaluation. Dr. Mims noted the claimant's thought processes were not grossly psychotic.

The claimant revisited Dr. Mims in June 2011. Dr. Mims noted the claimant did not appear to be a danger to himself or others. However, Dr. Mim's questioned the trustworthiness of the claimant's self-reports. The following month, the claimant revisited Dr. Mims, who adjusted the claimant's medications.

In October 2011, the claimant returned to Dr. Mims for another evaluation. Dr. Mims noted the claimant was "not exactly cooperative" regarding his treatment and had to contact his case manager to make sure his laboratory tests were performed. Additionally, Dr. Mims changed the claimant's diagnosis to bipolar disorder give the claimant's subjective complaints of rapid, cycling mood swings.

In January 2012, the claimant revisited Dr. Mims. The claimant complained of increased irritability since his last visit with Dr. Mims, but Dr. Mims noted the claimant had been out of his medication.

. . . .

In reaching these conclusions [regarding Dean's mental impairments], I considered the findings during the claimant's treatment with Dr. Mims at MHMR. However, the majority of the claimant's mental status examinations with Dr. Mims are unremarkable, with the exception of the claimant's subjective complaints of a depressed mood and hallucinations. However, Dr. Mims questioned the trustworthiness of the claimant's self reports and noted the claimant was not fully cooperative regarding his recommendations for treatment. Likewise, although prior to the claimant's alleged onset of disability, the claimant's attending staff noted the claimant was over-reporting his psychotic symptoms. Nevertheless, I considered the claimant's allegations of hallucinations. However, Dr. Mims noted the claimant's thought processes were not grossly psychotic. . . .

(Tr. 25-26 (internal citations omitted).)

After setting forth the law regarding consideration of a treating physician's opinion as well as the factors that are to be considered in evaluating such opinion, the ALJ stated:

In January 2012, Dr. Mims completed a Mental Residual Functioning Report on behalf of the claimant. In that document, Dr. Mims opined the claimant was markedly limited in nearly every area of mental functioning. I have carefully considered Dr. Mims['] opinion. However, as indicated above, Dr. Mims['] mental status examinations have not revealed any limitations that would justify markedly limited restrictions regarding the claimant's mental functioning. Additionally, I noted that the claimant's TRAG ratings from the MHMR revealed only mild findings, which further undermines Dr. Mims' opinion. Furthermore, Dr. Mims noted that the claimant was not cooperative with treatment and questioned the claimant's truthfulness. Additionally, the claimant's prior attending staff also noted the claimant over-reported his alleged psychotic symptoms. I also note that the claimant's most recent treatment at the JPS Hospital revealed only minimal depression and was otherwise excellent. Accordingly, I find the objective medical evidence does not support Dr. Mims' severe and limiting opinion, and I have given Dr. Mims' opinion very little weight.

(Tr. 28 (internal citations omitted).)

Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating

physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [416.927]." 209 F.3d at 453; *see* 20 C.F.R. § 416.927. Under the statutory analysis of 20 C.F.R. § 416.927, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 416.927(c); *see also* SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Contrary to Dean's arguments, the ALJ did properly reject Dr. Mim's opinions in the Questionnaire. To begin with, in rejecting such opinions, the ALJ reviewed voluminous amount of medical evidence in the record, including the following: (1) an April 5, 2011 consultative examination in which Dr. Hilborn diagnosed Dean with major depressive disorder, assigned him a global assessment of functioning ("GAF")[5] score of 50,[6] listed his prognosis as good, and opined that Dean was (a) capable of managing all daily activities, (b) had "limited" social functioning at times, (c) was not able to complete tasks in a timely and efficient manner, and (d) was not impaired in his ability to comprehend and carry-out instructions (Tr. 24-25; *see* Tr. 235-38); (2) treatment notes from the attending staff at Mental Health Mental Retardation of Tarrant County ("MHMR") that "consistently noted the claimant answered questions that were asked of him, his attention and concentration were good, and his thought processes were organized and directed" (Tr. 26; *see, e.g.,* Tr. 59-61); (3) evidence that Dean was not always compliant with taking his medication or ran out of his medication (Tr. 25-26; *see, e.g.,* Tr. 378, 381, 397); (4)

---

[5] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-IV).

[6] A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. DSM-IV at 34.

examination notes from Dr. Mims showing, for the most part, that Dean's mental status examinations were unremarkable (Tr. 25-26). In addition, the ALJ acknowledged the law regarding treatment of a treating physician's opinions and ALJ explained that he was rejecting Dr. Mims' opinions in the Questionnaire because, *inter alia*,: (1) they were inconsistent with Dr. Mims' examination records and the other records from MHMR and (2) Dean was not always cooperative with treatment and appeared to be over-reporting his alleged psychotic symptoms. (Tr. 28.) Such reasons provide substantial evidence in establishing "good cause' for rejecting the opinions of Dr. Mims in the Questionnaire.

Furthermore, the Court concludes that the ALJ did properly evaluate Dr. Mims' opinions in the Questionnaire using the factors set forth in the regulations. As to factors one and two under which the ALJ evaluates the examining and treating relationship between Dean and Dr. Mims, the ALJ thoroughly reviewed Dean's treatment history with Dr. Mims and the numerous times Dean was examined and treated by Dr. Mims. (Tr. 25-26.) *See* 20 C.F.R. § 416.927(c)(1)–(2). In addition, it is clear that the ALJ recognized Dr. Mims was one of Dean's treating physicians as he set forth the law regarding evaluating a treating physician's opinion immediately prior to discussing Dr. Mims' opinions in the Questionnaire. (Tr. 27-28.) As to factors three, four, and six, under which the ALJ evaluates the supportability and consistency of physician's opinion as well as any other factors which "tend to support or contradict the opinion," the ALJ pointed out the internal inconsistencies between Dr. Mims' own examination records and the medical source statement as well as the inconsistencies in his treatment records with the other medical evidence in the record. (Tr. 25-28; *see* 20 C.F.R. § 416.927(c)(3)–(4), (6).) As to factor five under which the ALJ considers whether the physician is a specialist, it is implicitly clear from a reading of the ALJ's decision that the ALJ was aware Dr. Mims, who

13

works at MHMR, was a psychiatrist as he noted that Dr. Mims was specifically treating Dean for his mental impairments. (Tr. 25.) Because the ALJ properly considered the treatment records and opinions of Dr. Mims and went through the factors listed in 20 C.F.R. § 416.927(c) before rejecting Dr. Mims' opinions in the Questionnaire, the Court concludes that the ALJ did not err.

As to Dean's argument that the ALJ erred in rejecting every medical opinion of record, including Dr. Mims, the Court disagrees with Dean's characterization. While the ALJ did reject Dr. Mims' opinions in the Questionnaire, the ALJ did not reject the evidence set forth in Dr. Mims' treatment records. In addition, the ALJ did not reject the opinions of Dr. Hilborn in the consultative examination nor the treatment records of the attending staff at MHMR.

Dean's argument that the ALJ erred in interpreting the "TRAG ratings" as such ratings "have no value in making a determination of how limited Mr. Dean is in a work environment under the Social Security Act" is likewise unpersuasive. The Court notes that the ALJ did not rely exclusively on such ratings in rejecting Dr. Mims' opinions in the Questionnaire. Instead, the ALJ pointed to the TRAG ratings, which showed Dean suffered from only mild symptoms from his mental impairments, as further proof that Dean was not as impaired as opined by Dr. Mims in the Questionnaire. (Tr. 28; *see* Tr. 393.) The ALJ as factfinder has the sole responsibility for weighing the evidence. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") Because substantial evidence supports the ALJ's disability determination and the ALJ's determination to reject the opinions of Dr. Mims in the Questionnaire, remand is not required.[7]

---

[7] As to Dean's claim that the ALJ erred in interpreting Dr. Mims' statement regarding the trustworthiness of Dean's self-reporting of his symptoms, the Court notes that there is other evidence in the record that supports the ALJ's interpretation, including treatment notes from attending staff at MHMR that Dean was over-reporting his psychotic symptoms. (Tr. 26; *see* Tr. 209 ("likelihood of feigning and PAI invalid due to over-reporting of symptomology").

14

## C. Credibility

Dean next argues that the ALJ erred in failing to properly evaluate Dean's credibility.

(Pl.'s Br. at 18-20.) In support of this argument, Dean states:

> Here, the ALJ conceded that Mr. Dean's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found that his statements concerning the intensity, persistence, and limiting effects of his symptoms "not credible" (Tr. 24). He stated that the treatment notes from Dr. Mims were "unremarkable, with the exception of the claimant's subjective complaints of a depressed mood and hallucinations" (Tr. 26). He also noted that Dr. Mims questioned Mr. Dean's trustworthiness and noted that Plaintiff was not fully cooperative and at times non-compliant with treatment. *Id.*
>
> As was already discussed in detailed [sic] in Point I, *supra*, the ALJ mischaracterized the record by finding mental status examinations were generally unremarkable and by finding that Mr. Dean's untruthfulness exhibited that he was less limited [than] alleged. The only other reason the ALJ gave for finding Dr. Dean not credible was his alleged non-compliance with treatment. However, SSR 96-7p states that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." In addition, it is well-known that non-compliance with mental health treatment is frequently a symptom of disability rather than an indication that limitations are not severe. *See Pate Fires v. Astrue*, 564 F.3d 935, 945-6 (8th Cir. 2009) . . . .
>
> Mr. Dean gave extensive testimony regarding his symptoms and resulting limitations, his limited activities, and a lack of significant or sustained response to treatment . . . . The ALJ's failure to adequately consider Plaintiff's testimony on these subjects as required by SSR 96-7p or give any other cogent reason for finding Mr. Dean was not credible was reversible error.

(Pl.'s Br. at 19-20.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 416.929; SSR 96-7p, 1996 WL 374186, at *2

---

In addition, as to Dean's claim that the ALJ, in essence, erred in rejecting Dr. Mims' opinions in the questionnaire and relying on evidence that failed to show Dean could perform his RFC on a regular and continuing basis, the Court notes that the ALJ was aware of the requirement that the RFC must be able to be performed on a "sustained basis" when he made the RFC determination. (Tr. 21; *see* Pl's Br. at 16-17.)

(S.S.A. July 2, 1996).   Once the impairment is found, the ALJ evaluates the intensity, persistence

and limiting effects of the symptoms on the claimant's ability to do basic work activities.   20

C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *1.   A claimant's statements about pain

and other symptoms are not conclusive evidence of disability, but must be accompanied by

medical signs and findings of a medical impairment that could reasonably be expected to

produce the pain or other symptoms alleged and that would lead to the conclusion that an

individual is disabled. 42 U.S.C. § 423(d)(5)(A).   A claimant's testimony must be consistent with

the objective medical evidence and other available evidence.   20 C.F.R. § 416.929.

> Regarding the credibility determinations, the ALJ stated:

> > After careful consideration of the evidence, I find that the claimant's
> > medically determinable impairments could reasonably be expected to cause the
> > alleged symptoms; however, the claimant's statement concerning the intensity,
> > persistence and limiting effects of these symptoms are not credible.

> > . . . .

> > In reaching my finding as to the claimant's [RFC], I considered the
> > objective findings on the claimant's examinations and the claimant's subjective
> > complaints, as detailed above.   However, the objective medical evidence does not
> > support a finding of disability.   Therefore, I found that the claimant's allegations,
> > including his testimony, have only minimal credibility and are not credible to the
> > extent they are inconsistent with the above [RFC].

(Tr. 24, 28; *see* Tr. 23.)   In evaluating the evidence, the ALJ noted, *inter alia*, the following: (1)

at the time of the hearing before the ALJ, Dean lived at a halfway house due to his release from

prison (Tr. 23); (2) the trustworthiness of Dean's self-reports had been questioned by Dr. Mims

and the attending staff at MHMR (Tr. 25, 26, 28); (3) Dean had admitted to noncompliance with

his medication (Tr. 26); and (4) Dr. Mims had indicated that Dean was "not exactly cooperative"

regarding his treatment and Dr. Mims "had to contact the case manager to make sure his

laboratory tests were performed" (Tr. 25).

It is clear in this case that the ALJ properly considered Dean's credibility. Contrary to Dean's claims, the evidence in the record supports the ALJ's credibility determinations. While Dean disputes the ALJ's interpretation regarding Dr. Mims' assessment of Dean's truthfulness, there is other evidence in the record that supports such an interpretation that Dean was not always truthful, including that Dean had over-reported his alleged psychotic symptoms to attending staff at MHMR. (Tr. 28; *see* Tr. 209). Furthermore, even assuming without deciding that Dean's claims that the ALJ erred in relying on Dean's non-compliance with taking his medication to find Dean was not credible, any such error is harmless as there is other substantial evidence in the record, as set forth above, that supports the ALJ's credibility determination.[8] Thus, remand is not required.

### D. Testimony of VE

Dean further claims that the ALJ erred in relying on the VE's testimony to find that Dean was able to perform his past relevant work as a janitor. (Pl.'s Br. at 20-22.) Specifically, Dean argues that because the ALJ incorrectly rejected the opinion of Dr. Mims, as set forth above, the RFC finding was not based on substantial evidence. (Pl.'s Br. at 21.) Thus, the VE's testimony in response to a hypothetical based on a flawed RFC is unreliable. (Pl.'s Br. at 21.) However, because the Court concluded above that the ALJ properly rejected the opinions of Dr. Mims in the Questionnaire and the RFC finding was based on substantial evidence, the Court will not consider this argument.

---

[8] The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Brown*, 837 F.2d 1362, 1364 (5th Cir. 1988). "[R]emand for failure to comply with a ruling is appropriate only when a complainant affirmatively demonstrates ensuant prejudice." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (emphasis omitted). Errors are considered prejudicial when they "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Dean also argues that the ALJ erred in relying on the VE's testimony in response to a hypothetical that failed to incorporate all of the mental limitations found in the RFC determination. (Pl.'s Br. at 21-22.) Specifically, Dean states:

> The ALJ found Mr. Dean had moderate limitations in activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace. However, the hypothetical to the VE only limited Plaintiff to understand, remember, and carry out simple instructions in a simple and routine work environment, make judgments on simple work related decisions, tolerate only incidental face to face public contact, only incidental contact with co-workers, only occasional contact with supervisors, respond to usual work pressures appropriately, and respond appropriately to changes in a work setting. These limitations fail to account for the moderate restrictions found in Mr. Dean's capacity to maintain concentration, persistence, or pace, his moderate limitations in social functioning, or his moderate limitations performing activities of daily living.

(Pl.'s Br. at 21-22 (internal citations omitted).)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 416.920a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 416.920a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C, of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(2) & (c).[9] "Paragraph B" contains four broad functional

---

[9] This applies to all adult mental disorders in the Listings except Listings 12.05 and 12.09. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace;[10] and 4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[11]   The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described.   20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 416.920a(d).  If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 416.920a(d)(1).  If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing.   20 C.F.R. § 416.920a(d)(2).[12]  To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder.   20 C.F.R. § 416.920a(d)(2).  If the impairment is severe but does not meet or equal a listed mental

---

[10] The category of concentration, persistence or pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P., App. 1, § 12.00C(3).

[11] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

[12] A claimant will be found to have a listed impairment "if the diagnostic description in the introductory paragraph [of the Listing] and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00A. "The criteria in paragraph A substantiate medically the presence of a particular mental disorder." *Id.* "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.*

impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 416.920a(d)(3); *see Boyd*, 239 F.3d at 705.

In this case, as set forth above, the ALJ found in his evaluation of Dean's mental impairments that Dean suffered from the severe impairments of affective mood disorder, bipolar disorder, depression, and polysubstance abuse in remission. (Tr. 22.)   In his "Paragraph B" analysis under the special technique, the ALJ further found that Dean had (1) moderate difficulties in social functioning and performing activities of daily living; (2) moderate difficulties with regard to maintaining concentration, persistence or pace; and (3) no episodes of decompensation. (Tr. 26.)   Based on the evidence in the record, the ALJ then found that such limitations were incorporated into the RFC determination as limitations to performing jobs that required Dean to understand, remember, and carry out short, simple instructions and make judgments on simple work-related decisions, have only incidental contact with the public or coworkers, and have only occasional contact with supervisors. (Tr. 23.)

As to Dean's claims that, in essence, the ALJ's RFC determination fails to adequately incorporate the moderate restrictions previously found by the ALJ as to Dean's ability to maintain concentration, persistence, or pace, and his moderate limitations in social functioning and performing activities of daily living, the Court notes that the responsibility for determining the RFC falls to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995*)*. The Paragraph B criteria limitations that the ALJ found following the "special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Instead, it is used to rate the severity of Dean's mental impairments at Steps 2 and 3 of the sequential evaluation process. Id.   "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad

categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the

Listing of Impairments." *Id.* "While the regulations require the ALJ to evaluate[] the limitations

imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the

RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically

require the ALJ to find that the limitations found in evaluating the mental impairment must be

word-for-word incorporated into either the RFC determination or the hypothetical question posed

to the VE." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept.

29, 2009).

Based on the facts in this case, the ALJ's RFC determination limiting Dean to the

performance of, in essence, "simple" job tasks is not inherently contradictory with the ALJ's

finding in the "special technique" that Dean was moderately limited in his abilities to maintain

concentration, persistence, or pace or perform activities of daily living as such limitations would

not preclude him from performing the "simple" requirements of his past previous work as a

janitor.[13] *See Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-3126-L (BF), 2013 WL

632104, at *19 (N.D. Tex. Feb. 4, 2013) (stating that, based on evidence impugning claimant's

credibility regarding her activities of daily living, "[t]he ALJ properly incorporated Plaintiff's

---

[13] Even assuming a limitation to "simple work" may not account for Dean's moderate restrictions in activities of daily living, "the ALJ's narrative discussion shows that [he] did consider the paragraph B criteria in assessing Plaintiff's RFC." *Jones v. Astrue*, No. 3:11-CV-3416, at *17 (N.D. Tex. Mar. 7, 2013). To begin with the ALJ specifically stated:

> Despite the above facts, I have given the benefit of all possible doubt regarding the impact of his subjective mental complaints upon his functional capacity. However, I do not find that the objective medical evidence supports a finding of more than a moderate restriction in the areas of activities of daily living, social functioning, and concentration, persistence, or pace, and I have found these restrictions limited the claimant to the performance [of] short, simple instructions, only incidental contact with the public or coworkers, and only occasional contact with supervisors.

(Tr. 26-27.) Moreover, the ALJ noted that in the April 5, 2011 consultative examination with Dr. Hilborn, Dean indicated he was able to manage all of his activities of daily living (Tr. 24) and, as discussed above, the ALJ questioned Dean's credibility in claiming he suffered from severe symptoms (Tr. 25-28).

moderate daily living activities in restricting Plaintiff to 'simple, repetitive tasks.'"); *Westover v. Astrue*, No. 4:11-CV-816-Y, 2012 WL 6553102, at *9 (N.D. Tex. Nov. 16, 2012) (holding that ALJ's RFC determination limiting claimant to performing only work that involved detailed instructions was not inherently contradictory to ALJ's finding the special technique that claimant was moderately limited in this ability to maintain concentration, persistence, or pace), *adopted in* 2012 WL 6553829 (Dec. 13, 2012); *Jackson v. Astrue*, No. 4:11-CV-028-Y, 2011 WL 4943547, at *8 (N.D. Tex. Aug. 23, 2011) (concluding that a claimant's marked limitation in concentration, persistence, and pace was not inherently contradictory with the finding that he was able to perform work involving only simple tasks), *adopted in* 2011 WL 4940998 (N.D. Tex. Oct 17, 2011); *Anderson v. Astrue,* No. 09–0971–TC, 2011 WL 1655552, at *3 (D. Or. Mar. 25, 2011) ("Moderate, and even marked limitations in the ability to maintain attention, concentration, persistence or pace are compatible with the ability to perform unskilled jobs involving simple tasks.").[14]

Moreover, contrary to Dean's arguments, the ALJ's limitation in the RFC that Dean can only have incidental contact with the public or coworkers and only occasional contact with supervisors does incorporate the ALJ's earlier finding that Dean had a moderate limitation in maintaining social functioning. *See Skiles v. Colvin*, No. 4:12-CV-418-Y, 2013 WL 3486921, at

---

[14] *See also Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (finding restriction to rare public interaction, low stress, and one-to-two step instructions reflect that ALJ has reasonably incorporated the Plaintiff's moderate concentration, persistence, and pace limitations); *De La Rosa v. Astrue*, No. EP-10-CV-351-RPM, 2012 WL 1078782, at *14-15 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that claimant had moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was, *inter alia*, able to understand, remember, and carry out detailed but not complex instructions, make decisions, and attend and concentrate for extended periods. *But see Eastham v. Comm'r of Soc. Sec. Admin.,* No. 3:10-CV-2001-L, 2012 WL 691893, at *8 (N.D. Tex. Feb. 17, 2012) ("The Court finds the Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive."), *adopted in* 2012 WL 696756 (N.D. Tex. Mar. 5, 2012) (Lindsay, J.); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (finding that claimant's impairment in concentration, persistence, or pace was not accommodated by limitation to simple tasks in the hypothetical to the vocational expert because it did not account for deficiencies in pace); *Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) ("As determined by several courts, a finding that Plaintiff can perform unskilled work is fatally flawed where the ALJ has found Plaintiff to have moderate limitations in concentration, persistence, or pace.")

*10 (finding that a moderate limitation in maintaining social functioning was properly incorporated into the RFC determination that claimant could only work with things rather than people); *Herring v. Astrue,* 788 F.Supp.2d 513, 516–19 (N.D. Tex.2011) (finding that a moderate limitation in social functioning was reasonably incorporated into the RFC and hypothetical question as a limitation that the claimant could respond appropriately to supervisors and co-workers in a simple and routine work environment); *Vaughn v. Astrue,* No. 3:08–CV–1920–L, 2009 WL 3874607, at *6 (N.D. Tex. Nov.17, 2009) (upholding ALJ's findings as supported by substantial evidence and finding that hypothetical reasonably incorporated impairments ALJ found, despite failure to include moderate social functioning limitations).   The ALJ properly discussed the evidence in the record in making the RFC determination, explained the reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Once the ALJ has made the RFC determination, the ALJ moves on to Step 4 of the disability analysis.  When determining at Step Four whether the claimant could perform her past relevant work, the ALJ is permitted to consult a VE.  *See, e.g., Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that [the claimant] was able to return to her past relevant work."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony.")  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d, 129, 132 (5th Cir.

23

1995). At step 4, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564.

In this case, the VE testified, *inter alia*, that Dean could perform his past relevant work as a janitor, which is medium, unskilled work with a specific vocational preparation ("SVP")[15] of 2. (Tr. 28; *see* Tr. 50-51.) The ALJ based his decision at Step Four that Dean could perform his past relevant work on the VE's testimony. (Tr. 28.) As to Dean's claim that the ALJ also failed to incorporate Dean's moderate limitations in activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace in the hypothetical to the VE, the Court notes that the hypothetical question posed to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's RFC assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

---

[15] According to the Dictionary of Occupational Titles ("DOT"), the occupation of janitor requires, as noted by the VE, a specific vocational preparation ("SVP") level of 2 and also has a reasoning development level ("RDL") of 2. DOT § 381.687-018 (4th ed., rev. 1991). The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See* DOT at App. C. Level 2 is in the class of unskilled work, *see* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000), and is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," *see* 20 C.F.R. §, 416.968(a). An RDL of two requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT at App. C.

The Court notes that a job that requires an RDL of two is not necessarily inconsistent with the ability to perform only simple, routine work tasks. *See, e.g., Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 613–14 (E.D. Tex. 2009); *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009); *Dugas v. Astrue*, No. 1:07-CV-605, 2009 WL 1780121, at *6 (E.D. Tex. June 22, 2009) ("A limitation of performing 1–2 step instructions in a simple, routine work environment does not necessarily preclude the ability to perform jobs with reasoning levels of 2 or 3.") (internal citations omitted); *Adams*, 2008 WL 2812835, at *3 ("As several courts have held, reasoning level two requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations, and appears consistent with residual functional capacity to perform simple, routine work tasks.").

In the series of hypothetical questions that the ALJ asked the VE, the ALJ included all such limitations that he had found in the RFC determination. (Tr. 50.) The VE testified that an individual limited to such work could perform his past relevant job as a janitor. (Tr. 51.) In other words, the ALJ relied on the VE's testimony that specifically related to the functional limitations that the ALJ actually **found** in his RFC assessment. Although Dean's attorney asked the VE questions that contained additional limitations, the ALJ ultimately did not find that Dean suffered from such limitations and did not include such limitations in the final RFC determination. (Tr. 51-52.) Because the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" the RFC assessment, the ALJ did not commit error. *See Berry v. Astrue*, No. 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue,* No. 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments). Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only

make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 14, 2014**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 28, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

26